**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-02240-REB-KMT

Manuel Labbe Jr.,

      Plaintiff,

v.

Dillon Companies, Inc., d/b/a King Soopers, a Colorado foreign corporation,

      Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT**

---

      Plaintiff, Manuel Labbe, Jr., through his undersigned counsel, submits his

Response to Defendant's Motion for Summary Judgment, as follows:

## I. INTRODUCTION

      This case arises out of the unlawful termination of Plaintiff Manuel Labbe from

Defendant King Soopers ("Defendant" or "company"), in violation of Title VII of the Civil

Rights Act of 1964. The evidence provided by Mr. Labbe could allow a reasonable jury

to find that Defendant acted illegally regarding sexual harassment and retaliation. Based

on disputed facts, a necessary credibility determination, and Defendant's improper

request for a favorable inference as to its alleged motivation for terminating Mr. Labbe,

summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986) (credibility determinations must be left for the jury); *Fogarty v. Gallegos*, 523

1

F.3d 1147, 1165–66 (10th Cir. 2008) (same); *Seamons v. Snow*, 206 F.3d 1021, 1026

(10th Cir. 2000) (same).

## II. RESPONSE TO DEFENDANT'S PURPORTEDLY UNDISPUTED FACTS

Defendant claims that 84 facts are undisputed. Mot. pp. 1–10. Mr. Labbe agrees

that some of these facts so qualify and admits Defendant's Undisputed Facts

(hereinafter "DF") DF § A ss.1-4, 9; § B ss. 10-15; § C ss. 16-19, 21, 22, 24, 26-28; § D

ss. 35-39; DF footnote #2, 40- 43.[1] Mr. Labbe disputes the 55 DF "facts" that Defendant

promptly investigated Mr. Labbe's sexual harassment complaint against Mr. Ruley. DF §

D ss. 29-34. Mr. Labbe disputes that Defendant had no knowledge of Mr. Ruley's sexual

harassment against Mr. Labbe prior to June 2016. DF § C ss. 20, 23, 25. Mr. Labbe

disputes DF regarding his telephone call with Tom Salazar and that he made

threatening remarks DF § E ss. 44-59. Mr. Labbe disputes Defendant's reason for

terminating Mr. Labbe. DF § E ss. 44-59. DF § F ss. 60-75. Finally, Mr. Labbe disputes

that King Soopers uniformly applies and adheres to its policies for sexual harassment

and workplace violence. DF § A ss. 5-8, DF footnote #3, DF § G ss. 76-84.

## III. STATEMENT OF ADDITIONAL DISPUTED FACTS

### A. King Soopers' Awareness of Mr. Ruley's Sexual Harassment of Mr. Labbe

1.      Mr. Ruley is a homosexual man. Ex. 3, Ruley Dep. Excerpts (p. 24:13-17).

2.      Mr. Labbe is a heterosexual man and has been married for thirty-five years.  Def.

Ex. A, (p. 7:4-7).

---

[1] As a result of Defendant's failure to number paragraphs, Mr. Labbe uses Section § followed by
Sentence ("s") number as structure and basis to admit or deny Defendant's undisputed facts.  Mr. Labbe
also attaches Exhibit 2, in which all 55 disputed facts are highlighted.

3.      Defendant has a sexual harassment policy permitting an employee to report harassment to their immediate supervisor, store manager, or anyone in management. Def. Ex. V, (p. 35:21-24).

4.      A complaint of sexual harassment may be unwritten. Def. Ex. V, (p. 35:18).

5.      All Defendant's employees receive training on sexual harassment and sign Defendant's sexual harassment policy. Def. Ex. V, (p. 33:18-32).

6.      Defendant has a training department within the HR Department and uses Mountain States Employers Council and Sherman & Howard to train and educate its employees on its policies. Ex. 4, 30(b)(6) Klein Dep. Excerpts (pp. 64:11-65:21).

7.      Manager Jason Daniluk received sexual harassment training and is aware of Defendant's policies. Ex. 5, Daniluk Dep. Excerpts (p. 36:17-19).

8.      As Store Manager, Chris Romero has an obligation to follow Defendant's policies. Ex. 6, Romero Dep. Excerpts (p. 30:17-19).

9.      Tom Salazar, HR District Manager, was responsible for ensuring that employees complete policy training and get refresher courses when necessary. Ex. 7, Salazar Dep. Excerpts, (p. 76:5-8).

10.     Mr. Ruley's sexual harassment of Mr. Labbe happened on numerous occasions over the course of a year. Ex. 8, Labbe Dep. Excerpts, (pp. 33:25-34:19).

11.     On January 7, 2016, Mr. Labbe called Chris Watanabe, HR, to ask what he had to do to get Mr. Ruley to stop sexually assaulting and harassing him. Ex. 8, (p. 40:18-20). Mr. Watanabe suggested that Mr. Labbe tell Mr. Ruley to stop harassing him, document the times and dates, and get witnesses if he could. Ex. 8, (p. 41:6-9).

12.     Defendant did not conduct any investigation about this report of harassment or take any action to prevent further sexual harassment.  Ex. 8, (p. 41:6-9).

13.     Employees at Store 103, where Mr. Labbe worked, knew that Mr. Ruley made comments, gestures and physically touched Mr. Labbe but none of the employees reported the conduct against Labbe. Ex. 3, (p. 47:15-18).

14.     Amanda Tackett was Mr. Labbe's immediate supervisor at Store 103 from April 27, 2015 to July 16, 2016.  Ex. 9, Key Documents at DP_000597-00600 and DP_000609-000610.

15.     Before April 2016, Ms. Tackett was present when Mr. Ruley called Mr. Labbe "[his] bitch[;]" her response was, "You probably are his bitch." Def. Ex. A, (p. 34:18-19).

16.     Ms. Tackett did not report this harassment. Ex. 3, (p. 47:15-18).

17.     On March 18, 2016, Mr. Labbe was in the backroom with fellow coworker Dave Lummis when Mr. Ruley stated he wanted Mr. Labbe to put on a pair of Daisy Duke shorts. Ex, 9 at Labbe_000111; Def. Ex. A, (p. 49:10).

18.     Mr. Labbe's coworkers, Mary Reese, Joe Garcia, and Mr. Lummis, were present on different occasions when Mr. Ruley called Mr. Labbe "[his] bitch." Def. Ex. A, (p. 36:23-25) Ex. 8, (pp. 50:24-51:6).

19.     Grocery Manager Randy Johnson also witnessed Mr. Ruley call Mr. Labbe "[his] bitch" and, on a different occasion, grab his breast. Ex. 3, (pp. 124:13-125:23).

20.     Management was aware of Mr. Ruley's actions against Mr. Labbe. Def. Ex. A, (pp. 124:13-125:23).

21.     Ms. Reese, Mr. Garcia, Mr. Lummis did not report any of Mr. Ruley's conduct.

Ex. 3, (p. 47:15-18).

22.     Mr. Lummis witnessed Mr. Ruley grinding on Manager Jason Daniluk. Mr.
Daniluk admitted to Mr. Labbe that Mr. Ruley grinded on him and that he told HR. Ex. 8,
(pp. 143:24-144:3).

23.     On April 8, 2016, Mr. Labbe walked in the bread and produce room when Mr.
Ruley called out Mr. Labbe's name; then Mr. Ruley unzipped his pants, jiggled his pants
around his penis and asked Mr. Labbe "to do something for [him.]" Ex. 8, (p. 38:17-20).

24.     On April 8, 2016, Mr. Ruley grabbed and twisted Mr. Labbe's nipple. Ex. 9 at
Labbe_000111.

25.     On April 8, 2016, Mr. Labbe told Mr. Ruley that he did not want Mr. Ruley
grabbing and pinching his nipples anymore. Ex. 9 at Labbe_000111.

26.     When Mr. Ruley grabbed and pinched Mr. Labbe's nipples, Mr. Labbe felt
violated. Ex. 8, (p. 30:11-12).

27.     Before Mr. Ruley pinched Mr. Labbe's nipples, Mr. Ruley asked, "Are you cold?"
referring to Mr. Labbe's nipples. Ex. 8, (p. 31:18-21).

28.     On April 22, 2016, Mr. Labbe performed his job responsibilities while kneeling in
the produce area on the sales floor. Mr. Ruley thrust his pelvic area and penis into Mr.
Labbe's face and then said to Mr. Labbe, "Tie my shoe." Mr. Labbe found this sexual
innuendo offensive. Def. Ex. F, June 14, 2016 Statement by Labbe; Compl., ¶ 17.

29.     On June 8, 2016, Mr. Ruley was present in Store 103. While in the back room,
Mr. Ruley grabbed and pinched Mr. Labbe's nipple. Ex. 3, (pp. 169:10-17,
189:24-191:22).

**B. Defendant Excuses Mr. Ruley's Sexual Harassment as Horseplay.**

30.     Mr. Ruley claimed the sexual harassment of Mr. Labbe was horse-play with. Ex.

10, Carreras Dep. Excerpts (p. 12:4-7).

31.     Mr. Salazar interviewed Mr. Ruley about Mr. Labbe's allegations of sexual

harassment and concluded Mr. Ruley's statements conflicted with Mr. Labbe's

statement. Ex. 9 at DP_000939. During the sexual harassment investigation Defendant

said that Mr. Labbe acted like they joked with each other all the time. Ex. 9 at

DP_000939.

32.     Hank Carreras, Union Representative, characterized Mr. Ruley and Mr. Labbe's

relationship as a long-term relationship of harassing each other. Ex. 10, (p. 16:2-3).

33.     Mr. Ruley gave a statement about the harassment stating that he patted Mr.

Labbe on the back to say "hello" on June 8, 2018. Def. Ex. N at DP00922.

34.     Colo. Rev. Stat. Ann. § 18-3-401 *et seq.* classifies unlawful sexual contact as a

Class 1 misdemeanor the definition of it includes unwanted touching of the breasts.

35.     Colo. Rev. Stat. Ann. § 18-1.3-501 provides that the general assembly has

determined that unlawful sexual contact presents an extraordinary harm to society and

in the interest of public safety, increases the maximum sentence.

36.     Defendant did not acknowledge the sexual harassment; on July 1, 2016,

Defendant terminated Mr. Ruley for gross misconduct and lying. Ex. 9 at DP 000924.

Def. Exs. S, (pp. 29:11-30:5), N at DP000919.

37.     HR made the termination decision for Mr. Ruley. Ex. 3, (p. 192:10-16).

38.      On August 25, 2016, Mr. Ruley was reinstated by Stephanie Boughknight, of

King Soopers Labor Relations. Ex. 9 at DP_001023-001025.

**C. Mr. Ruley Frequented 103 After His Termination; Mr. Labbe Felt Threatened**

39.     After Mr. Ruley was terminated, between June 14, 2016 and August 28, 2016, he

visited Store 103 approximately four times per month. Ex. 3, (pp. 207:21-212:4).

40.     Mr. Ruley denied visiting the back room and employee-only areas between June

14, 2016 and August 28, 2016. Ex. 3 (p. 211:6-17). Mr. Labbe and other employees

witnessed Mr. Ruley's presence in employee-only areas. Def. Ex. A, (p. 72:13-20).

41.     When Mr. Ruley reappeared on numerous occasions, Mr. Labbe did not feel

safe. One time, Mr. Ruley stared at Mr. Labbe the entire time that he was in Store 103

and "mad dogged" Mr. Labbe, leering at Mr. Labbe in a threatening manner. Ex. 8, (p.

62:11-18).

42.     Mr. Labbe considered Mr. Ruley's recurrent loitering in the store as a threat. Ex.

8, (p. 62:11-18).

43.     Mr. Labbe tried to avoid Mr. Ruley. Ex. 8, (p. 55:12-15).

44.     Mr. Lummis felt unsafe when he saw Mr. Ruley in the back room because he had

given a written statement against Mr. Ruley. Ex. 8, (p. 65:10-14).

45.     Mr. Labbe relayed to Mr. Salazar that he and Mr. Lummis felt unsafe because

Mr. Ruley was in the backroom of Store 103. Def. Ex. A, (p. 72:10-17).

46.     The Workplace Violence Policy provides that once an employee complains about

being unsafe at work, an investigation should be conducted, witnesses should be

interviewed, and findings forwarded to HR for investigation. Ex. 5, (p. 37:14-24).

47.     Mr. Labbe feared for his physical safety after Mr. Ruley was terminated. Ex. 8, (p.

54:22-24).

48.     Daniel McCollett, Senior Asset Protection Specialist, was aware that Mr. Labbe had reported Mr. Ruley coming into the store after his termination. Ex. 11, McCollett Dep. Excerpts, (pp. 42:25-43:2).

49.     Linda Kauffman, an APC clerk at Store 103, saw Mr. Ruley revisit the store post-termination, and after he was in the back room on a different occasion, she saw the words "dick cheese" scrawled next to Mr. Labbe's name on the schedule. Ex. 8, (p. 66:16).

50.     Mr. Labbe told Mr. Daniluk about Mr. Ruley's presence in the backroom of Store 103 and Mr. Daniluk said he would find out more information; Mr. Labbe never heard back from Mr. Daniluk. Def. Ex. A, (p. 67:3-7).

51.     Mr. Labbe asked Christine Morgan, his former Assistant Store Manager, for Mr. Salazar's number so that he could talk to Mr. Salazar about not feeling safe because of Mr. Ruley's post-termination visits to the store.  Def. Ex. A, (p. 71:16-20).

52.     Ms. Morgan told Mr. Labbe that Mr. Salazar was not happy she had given his telephone number to Mr. Labbe.  Def. Ex. A, (p. 71:16-20).

53.     On August 16, 2016, Mr. Labbe asked if Defendant could stop Mr. Ruley from entering Store 103 when Mr. Labbe worked. Def. Ex. A, (p. 72:4-7).

54.     Mr. Labbe requested that Defendant get a protection order against Mr. Ruley for safety reasons. Def. Ex. A, (pp. 71:16-73:15).

**D.  King Soopers' Trespass Policy**

55.     King Soopers has a policy that allows it to prohibit people from coming on to the

premises. Ex. 9 at DP_002080-002082. Neither Defendant nor Mr. Salazar mentioned that this policy existed to Mr. Labbe at any time.

56.     An employee is not required to get a restraining order against another person for that person to be banned from the store.  Ex. 12, 30(b)(6) Barta Dep. Excerpts, (pp. 57:19-58:1).

57.     A Store Manager may tell individuals to stop accessing an employee restricted area. Ex. 12, (pp. 59:22-60:10).

58.     An employee feeling threatened should report it. Def. Ex. X, (p. 66:2-3).

59.     Defendant had a duty to investigate Mr. Labbe's safety concerns. Ex. 11, (p. 24:2-9).

60.     Mr. Salazar performed no investigation into Mr. Ruley's repeated unusual reappearance at Store 103 even though he was required to report Mr. Ruley's conduct. Def. Ex. X, (p. 68:3-4).

61.     Mr. Salazar told Mr. Labbe he could not stop Mr. Ruley from visiting Store 103. Def. Ex. A, (p. 72:2-4).

62.     Mr. Salazar said Mr. Ruley was in Store 103. Def. Ex. A, (p. 72:8).

63.     When Mr. Labbe asked if Mr. Salazar could call Denver HR and ask if Mr. Labbe could do anything about Mr. Ruley's repeated visits to the store, Mr. Salazar responded "No." Def. Ex. A, (p. 72:22-24).

64.     Mr. Labbe stated that he was concerned that "Mr. Ruley could bring a gun in and shoot me." Def. Ex. X, (Page 73:7-9).

65.     On August 16, 2016, a workplace violence investigation was initiated by Mr.

Salazar and he first reported in writing that Mr. Labbe said, "I will bring my gun to work and I will shoot him." Ex. 9 at DP_000637.

66.     Mr. Salazar later told the Union Representative that Mr. Labbe said he "would go home and get his gun to protect himself." Def. Ex. S, (pp. 21:22-22:2).

67.     Mr. Salazar then testified at his deposition that Mr. Labbe said, "I'm going to take action and bring my gun and shoot him."  Def. Ex. J, (Page 37:9-10).

68.     At Mr. Labbe's step one grievance meeting, Mr. Carreras heard Mr. Labbe express concern about a news story in which a former employee shot a doctor. Mr. Carreras did not perceive Mr. Labbe's words as a threat, but as concern that Mr. Ruley could do this to Mr. Labbe. Def. Ex. S, (pp. 26:23-27:3).

## IV. ARGUMENT

### A. Summary Judgment Standard

Under F.R.C.P. 56, summary judgment is only appropriate if the pleadings, depositions, documents, and answers to the interrogatories, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). It is the moving party's burden to demonstrate the lack of a genuine issue of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The record "must be viewed in the light most favorable" to plaintiff, resolving all ambiguities and drawing all reasonable inferences against defendant. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). This Court must disregard evidence presented by defendant that is contradicted, impeached, or provided by an interested witness. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

151 (2000). Summary judgment is not proper for settling issues of intent or motive in employment discrimination actions. *Roemer v. Pub. Serv. Co.*, 911 F. Supp. 464, 468 (D. Colo. 1996). "The ultimate factual determination of whether the employer's decision was motivated by intentional discrimination based upon protected class characteristics is for the trier of fact." *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995).

## B. A Reasonable Jury Could Find Mr. Ruley Sexually Harassed Mr. Labbe

To establish that a hostile work environment based on sex existed, a plaintiff must prove the following elements: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) the severity or pervasiveness of the harassment altered terms, conditions, or privileges of the plaintiff's employment and created an abusive working environment. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007); *Dick v. Phone Directories Co., Inc.* 397 F.3d 1256, 1262-63 (10th Cir. 2005).

### i. Protected Class.

Plaintiff is a male and a member of a protected class. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (recognizing same gender sexual harassment claim).

### ii. A Reasonable Jury Could Find That Mr. Ruley's Overt Sexual Assaults And Repeated Sexual Contact With Plaintiff Was Done Because Of Mr. Labbe's Sex.

The Tenth Circuit has held that "one way . . . a plaintiff in a same-sex harassment suit may demonstrate that the harassing conduct was motivated by sexual desire, and therefore, occurred because of [his] sex, is to establish both that the harassing conduct

constitutes an explicit or implicit proposal for sexual activity and that [his] harasser is homosexual." *Dick*, 397 F.3d at 1265 (citing *Oncale*, 523 U.S. at 80). Here, Mr. Labbe can establish both.

First, Mr. Ruley is openly gay. PF #1. Mr. Labbe is a heterosexual male who has been married for thirty-five years. PF #2. Second, Mr. Ruley solicited oral sex from Mr. Labbe. PF #3-24. That solicitation for oral sex in addition to Mr. Ruley's repeated words, gestures, and sexualized touching of Mr. Labbe constitutes a proposal for sexual activity from Mr. Labbe. *Id.* Accordingly, a jury could reasonably conclude that Mr. Labbe was harassed because of his sex.

Defendant cites two other incidents between Mr. Ruley and female employees to show that Mr. Ruley was an equal opportunistic harasser: (1) he "football smacked" Valeska Brinkley, a female coworker; and (2) he stuck his tongue in a female coworker's ear. Def. Ex. Z. To the contrary, these incidents show that Mr. Ruley's harassment of Mr. Labbe was because of sex. Indeed, evidence supports that Mr. Labbe, as a male, was subjected to disadvantages that neither woman incurred. *Dick*, 397 F.3d at 1263 ("the critical issue in determining whether harassment is because of sex is whether members of one sex are subjected to a disadvantage to which the other sex is not"). First, Ms. Brinkley had a friendship with Mr. Ruley and she did not believe that Mr. Ruley's football pat was offensive or harassing. Def. Ex. Y. Next, Defendant admits it does not know whether an investigation occurred or whether the conduct was unwelcome regarding the second incident. Def. Ex. Z. Given Mr. Ruley's sexual preference for men, his explicit sexual comments, gestures, and request for oral sex

from Mr. Labbe, Mr. Labbe was subjected to disadvantages unique to his gender. Thus, a reasonable jury could infer Mr. Ruley harassed Mr. Labbe because of sex.

### iii. Mr. Ruley's Conduct Was Unwelcome.

Whether conduct was unwelcome "turns largely on credibility determinations committed to the trier of fact" and "whether respondent by [his] conduct indicated that the alleged sexual advances were unwelcome[.]" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) (internal citations omitted). Here, in response to Mr. Ruley's sexual conduct, contact, and proposals, Mr. Labbe felt "violated." PF #21. Mr. Labbe voiced his objections to Mr. Ruley several times. PF #6,7,8, 20. Mr. Labbe told Human Resources that Mr. Labbe was the subject of unwanted harassment. PF #6. Mr. Labbe repeatedly told Mr. Ruley that he did not want Mr. Ruley touching him or calling him his bitch. PF #8-16. Mr. Labbe expressly indicated that Mr. Ruley's actions were unwelcome.

### iv. A Jury Could Find Severe Or Pervasive Conduct

To establish the fourth element, Mr. Labbe must show that "[t]he workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). This Court must look to a "totality of the circumstances," and "consider[] such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Chavez v. New Mexico*, 397 F.3d 826, 832–33 (10th Cir. 2005) (internal citations omitted). "[T]hat

[objective] inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81. "Conduct which is considered normal and appropriate in one setting may be deemed abusive or hostile in another." *EEOC v. Fairbrook Med. Clinic*, 609 F.3d 320, 328 (4th Cir. 2010).

"[T]he severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999). And courts regularly reject summary judgment where limited episodes of harassment are extremely serious and physical contact allegations were nonexistent. *See Wright v. Rolette Cty.*, 417 F.3d 879, 885 (8th Cir. 2005) (defendant's conduct could constitute sexual harassment absent allegations that he touched or made sexual advances toward the plaintiff); *Howley v. Town of Stratford*, 217 F.3d 141, 148–49, 154–55 (2d Cir. 2000) (reversing summary judgment where plaintiff was subjected to a single "obscene harangue" and other non-physical harassment); *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (reversing summary judgment where defendant sent plaintiff two bizarre letters and arranged to be transferred back to her office following a six-month separation). Moreover, a defendant's act of exposing himself is "extreme" sexual harassment. *Hendry v. Schneider*, 116 F.3d 446, 447, 450 (10th Cir. 1997).

Here, based on a totality of the circumstances, the jury should evaluate Mr. Ruley's repeated nipple twisting, asking Mr. Labbe to wear Daisy Duke shorts, calling Mr. Labbe "[his] bitch[,]" and Mr. Ruley's act of unzipping his pants and "jiggling" his penis in Mr. Labbe's face. DF, § B s. 10, 11-15, PF #1, 2, 5, 6, 8, 10, 12, 13-15, 18-24,

25-31. In evaluating such conduct, a jury, not the Court, should determine whether such conduct was so severe or pervasive as to alter Mr. Labbe's working conditions; a jury should decide whether the environment was objectively hostile or if King Soopers employees should be expected to tolerate this conduct as normal and appropriate.

Defendant cites *Penry v. Federal Home Land Bank* for justification that Mr. Ruley's conduct was neither severe nor pervasive. 155 F.3d 1257 (10th Cir. 1998). Defendant's reliance on *Penry* is misplaced. *Penry* involved gender and gender-neutral incidents that "were spread out over a period of more than three years." *Id.* at 1263. Here, the incidents were gender-motivated, gender-related, sexual in nature, and explicit proposals for sexual activity that occurred in a matter of months. Mr. Ruley's act of shoving his penis in Mr. Labbe's face and his repeatedly grabbing and twisting Mr. Labbe's nipples regularly occurred between January to June 2016. PF #10, 11, 13, 24, 27. These acts, if true were offensive and criminal. PF #34-35.  Acts with gender-related implications are "relevant for evaluating whether 'ambiguous conduct' was in fact gender-motivated or whether 'gender-motivated conduct was severe or pervasive as to create Title VII liability.'" *Id. Penry* does not preclude the jury from deciding whether Mr. Ruley's conduct was severe or pervasive.

## C. Defendant Is Not Entitled To The Ellerth/Faragher Defense

The *Ellerth/Faragher* affirmative defense allows an employer to escape liability for a hostile work environment based on supervisor conduct if the employer demonstrates that (1) it took "reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) the aggrieved employee 'unreasonably failed to

take advantage of any preventative or corrective opportunities provided by the employer.'" *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998). Defendant cannot establish this prong, and is therefore liable for the hostile work environment created by Mr. Ruley.

"[T]he existence of a sexual harassment policy and training alone does not satisfy the employer's burden under the first prong of the *Ellerth/Faragher* defense because the employer must . . . take reasonable care . . . to correct promptly any such [sexually harassing] behavior." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1062 (10th Cir. 2009). The employer does not satisfy the first prong if it has "actual or constructive knowledge of the hostile work environment" and "did not adequately respond to notice of the harassment." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). An employer has actual or constructive knowledge of the harassment when management-level employees knew, or reasonably should have known of the harassment. *Id.* An employer is not negligent if it takes actions that "include a prompt investigation, proactive solicitation of complaints, employee transfers, or warnings to offending employees." *Dunlap v. Spec Pro, Inc.*, 939 F. Supp. 2d 1075, 1085 (D. Colo. 2013). Actual knowledge of sexual harassment in violation of Title VII typically exists where the plaintiff has reported harassment to management-level employees; moreover, the pervasiveness of sexual harassment can properly lead to an inference of knowledge. *Harsco Corp. v. Renner*, 475 F.3d 1179 (10th Cir. 2007); *see also Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1417–18 (10th Cir.1987).

Here, Defendant failed to promptly correct Mr. Ruley's behavior. It is true that

Defendant initiated and completed an investigation when Mr. Labbe complained to management and HR in June 2016. But that was not the first time Defendant was notified of Mr. Ruley's sexual harassment. Defendant's harassment policy permits an employee to tell their immediate supervisor, the store manager, or anyone in management about the harassment and the complaint does not have to be in writing. PF #3-7; Df § G s. 78-80. Mr. Labbe repeatedly complained to his managers about Mr. Ruley, starting as early as January 2016. PF #11-22. Mr. Labbe also verbally complained to manager Randy Johnson about Mr. Ruley. PF #14-16. Ms. Tackett, Mr. Labbe's immediate supervisor, personally witnessed Mr. Ruley's harassment and did nothing. PF #14-16. Mr. Ruley's conduct towards Mr. Labbe was common knowledge. PF #13, 20. Despite King Soopers' extensive resources and knowledge of its legal obligations, it failed to conduct a prompt investigation, proactively solicit complaints, make any employee transfers, or warn Mr. Ruley. PF #3-9. Unfortunately, it was management's decision to rehire Mr. Ruley within weeks of his termination and four days before Mr. Labbe's termination. PF#5-17.  Accordingly, a reasonable jury could find that Defendant failed to remedy or prevent a hostile or offensive work environment of which its management-level employees knew, or in the exercise of reasonable care, its management-level employees should have known.

**D. Retaliation**

To demonstrate a retaliation claim, plaintiff must show he engaged in protected activity; he suffered a materially adverse action, and there exists a causal connection between the protected activity and the adverse action. See *Vaughn v. Epworth Villa*,

537 F.3d 1147, 1150 (10th Cir. 2008).

### i. Mr. Labbe Engaged In Protected Activity.

For retaliation claims, "protected activity" includes participation in "an investigation, proceeding, or hearing," or opposition to "an unlawful employment practice [under] Title VII." *Vaughn*, 537 F.3d at 1151. Mr. Labbe engaged in both types of protected activity; he filed a complaint, informed management about Mr. Ruley's harassment, and participated in the investigation against Mr. Ruley. After Mr. Ruley's termination, Mr. Labbe engaged in further protected activity by complaining to management and HR about Mr. Ruley's continued harassment. He specified that Mr. Ruley's behavior included, entering employee-only restricted areas, writing "dick cheese" on the schedule by Mr. Labbe's name, and "mad dog[ging]'" Mr. Labbe. PF #39-54. Mr. Labbe asked that Defendant protect him from the continued abuse and threatening conduct. PF #41

### ii. Mr. Labbe Suffered Materially Adverse Actions.

In retaliation claims, the standard is whether a reasonable employee might be dissuaded from making the charge of discrimination if he had known that the employer would take the challenged action in response. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008). Mr. Labbe made a sexual harassment complaint against Mr. Ruley resulting in Mr. Ruley's brief termination. PF #36-38. Thereafter, Mr. Labbe made two more complaints to management about feeling unsafe and threatened by Mr. Ruley's lingering presence in the store. No investigation was completed because of Mr. Labbe's workplace safety complaints. PF #39-64. Instead, Defendant misconstrued his

statements and terminated Mr. Labbe. PF #64, 68. Defendant's action is materially adverse because being terminated might dissuade a reasonable employee from opposing illegal employment practices.

### iii. Causal Connection.

"[A] causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *MacKenzie v. City & Ctny. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (internal quotations omitted). Temporal proximity under two months is "sufficiently probative of retaliatory motive" to prove causation. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1241 (10th Cir. 2004); *see also Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1991). On June 8, 2016, Mr. Labbe complained of sexual harassment. Mr. Ruley was terminated effective July 1, 2016 and then reinstated only eight weeks later. Although no longer employed by Defendant, Mr. Ruley continued to return to Store 103, making Mr. Labbe and his other coworkers feel threatened. On August 16, 2016, Mr. Labbe complained to Mr. Salazar about Mr. Ruley's behavior and requested help. In response, Defendant targeted Mr. Labbe instead of following its own policies. Mr. Labbe was terminated approximately two weeks later, on September 1, 2016. A reasonable jury could determine that Mr. Labbe has established the causation element because of close temporal proximity of the protected activity of complaining about Mr. Ruley's continued harassment after his termination and Defendant's decision to terminate Mr. Labbe.

Mr. Labbe has established all *prima facie* elements of his retaliation claim.

**E. A Jury Could Determine Defendant's Justifications For Termination Are False.**

Plaintiff agrees with Defendant that "there is genuine issue of material fact as to pretext." Def. Mot. for Summ. J., p. 19 [Doc. No. 56]. Pretext exists when an employer does not honestly represent its reasons for terminating an employee, and therefore, its proffered reasons are unworthy of belief. *Miller v. Eby Realty Grp LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1155 (10th Cir. 2008).

Defendant maintains that its nondiscriminatory purpose for Mr. Labbe's termination was because of an August 16, 2016 phone call to Mr. Salazar where Mr. Labbe reported Mr. Ruley's presence in the store and asked for help. No investigation was completed in response. The legitimacy of Defendant's proffered reason for Mr. Labbe's termination, that he violated Defendant's workplace violence policy, depends largely on the credibility and testimony of Mr. Salazar. Mr. Salazar's recollection of his telephone call with Mr. Labbe were inconsistent. PF #65-67. A reasonable jury could determine that Mr. Labbe's concerns were distorted, manufactured, and used in an attempt to legitimize his termination. Thus, this factual issue a credibility determination for the trier of fact to decide. *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984) ("where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Manuel Labbe respectfully requests that

Defendant's Motion for Summary Judgment be denied.

Respectfully submitted this 5th day of September 2018.

*s/ Brooke H. Meyer*

Brooke H. Meyer
Livelihood Law, LLC
3401 Quebec Street, Suite 6009
Denver, Colorado 80207
Phone: (720) 465-6972
bhm@livelihoodlaw.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on September 5, 2018, the foregoing Plaintiff's Response was filed with the CM/ECF electronic filing system, which will automatically notify Defendant by email as follows:

Heather Fox Vickles
hvickles@hismanhoward.com

Raymond M. Deeny
rdeeny@shermanhoward.com

Mercedes G. Pineda
mpineda@shermanhoward.com

_s/ Amber Klein_
Amber Klein