**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-02240-REB-KMT

MANUEL LABBE JR.,

        Plaintiff,

v.

DILLON COMPANIES, INC. d/b/a King Soopers,

        Defendant.

---

### REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Dillon Companies, Inc. d/b/a King Soopers ("King Soopers"), submits the following Reply in Support of its Motion for Summary Judgment (Doc. 56).

**I.   All factual assertions in King Soopers' Motion must be deemed undisputed due to Plaintiff's failure to properly support his position.**

In his Response, Labbe disputes 55 of King Soopers' Undisputed Facts (Doc. 68 at 2). The Federal Rules of Civil Procedure require that a party asserting that a fact is genuinely disputed must support the assertion by (a) citing to particular parts of materials in the record, or (b) showing that the materials cited do not establish the absence of a genuine dispute, or the fact is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(1). Labbe fails to establish a genuine dispute as to any of King Soopers' facts because he did not support his assertions as required under Rule 56(c)(1). Labbe offers no citations to the record demonstrating that these 55 facts are genuinely disputed or unsupported by admissible evidence. Resp. at 2. Due to Labbe's failure to

properly support any of his denials, all statements of material fact in King Soopers' brief should be considered undisputed. Fed. R. Civ. P. 56(e)(2).

**II.    Labbe's "Additional Disputed Facts" do not create any genuine issue of material fact precluding summary judgment.**

King Soopers does not dispute or comment on the "Additional Disputed Facts" set forth in Labbe's Response at ¶¶ 1-10, 14, 18, 21, 24-26, 29-30, 32-35, 40-43, 45-48, 50-51, 53, 56-59, 61, or 63-67. However, many of the record citations provided in support of these paragraphs are incomplete, inaccurate, or do not support, or only partially support, the fact or facts asserted. As to the remaining facts:

11-12.   Labbe's testimony does not support the facts asserted. King Soopers does not dispute that Labbe made a telephone call to Watanabe on January 7, 2016. By his own admission, however, Labbe did not report any inappropriate conduct by Ruley at that time, "I didn't report it to him. I asked him to give me some clarification what I had to do to make sure that I was doing everything I needed to do . . . ." Ex. 8 at 40:21-24.

13.   The cited testimony does not support the fact asserted. Ruley testified that while he was a *produce clerk at Store 133* (in 2004, see Ex. II) no one accused him of harassment. Ex. 3 at 47:15-18. Ruley's testimony does not support Labbe's assertion that employees at Store 103 were aware of Ruley's conduct but did not report it.

15-16.   The cited material does not support the facts asserted. Labbe testified that he did not remember the date, including the month or year, when the incident occurred. Ex. A at 34:13-35:1. Labbe's recitation of Tackett's alleged response is inadmissible hearsay that cannot be used to defeat summary judgment. See, e.g., Adams v. Amer. Guarantee and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) ("Hearsay testimony that would be inadmissible at trial cannot be used to defeat a

2

motion for summary judgment because 'a third party's description of a witness' supposed testimony is 'not suitable grist for the summary judgment mill.'") (citations omitted). Finally, Ruley's testimony that while he was a *produce clerk at Store 133* (in 2004, see Ex. II), no one accused him of sexual harassment (Ex. 3 at 47:15-18), in no way establishes whether or not Tackett reported any alleged "harassment."

17. Undisputed, however Labbe's Ex. 9, p. 7 is inadmissible hearsay. Further, Labbe testified that he laughed at Ruley's comment about Daisy Duke shorts "[b]ecause it was just funny as hell." Ex. 8 at 51:10-22. Labbe did not say anything to Ruley about the comment, and he did not report it. *Id*. at 51:25-52:4.

19. Ruley's cited testimony in no way supports the fact asserted concerning what Johnson may have witnessed. Even if it did, it would be inadmissible hearsay testimony consisting of a third party's description of a witness' supposed testimony.

20. Labbe's cited testimony does not support the fact asserted. King Soopers first received notice of Ruley's behavior when Labbe finally reported it on June 8, 2016. Ex. A at 35:8-12. Labbe's self-serving testimony about what Tackett may have overheard on one occasion, and what Johnson may have observed on a different occasion, at some unspecified time prior to June 8, 2016, is insufficient to create a disputed issue of material fact about when "management" received notice of Ruley's conduct. Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004).

3

22. Labbe's cited testimony does not support the facts asserted. Further, Labbe's self-serving testimony concerning what Lummis and Daniluk supposedly told him is inadmissible hearsay.

23. That an incident occurred on April 8, 2016, is undisputed, however, Labbe misrepresents the evidence. There is nothing in the cited testimony supporting the assertion that Ruley "jiggled his pants around his penis." See Ex. 8 at 38:16-20. Labbe admitted that Ruley never exposed himself. Ex. 8 at 38:21-24.

27. Undisputed, but Labbe testified this occurred on one occasion on April 4, 2016. Ex. 8 at 31:17-23. Further, Labbe "just laughed and [was] like, what was that about." *Id.* at 31:22-24.

28. Undisputed, but to the extent Labbe implies Ruley exposed his penis, Labbe admitted this never occurred. Ex. 8 at 38:23-24.

31. King Soopers does not dispute the first sentence. As to the second sentence, the cited document does not support the assertion that King Soopers took the position that "Labbe acted like they joked with each other all the time." Rather, Ex. 9, p. 8, contains a handwritten note made during the investigation concerning the information contained in the attached written statement provided by *Ruley*.

36. The cited documents establish that the assertion that King Soopers "did not acknowledge the sexual harassment" is false. Ex. 9, p. 9 indicates that Ruley was fired for "gross misconduct along with lying during an investigation of inappropriate touching." Likewise, Ex. N, p. 1 indicates that Ruley was fired for "gross misconduct, inappropriate touching and lying on an investigation." Salazar testified that Ruley was fired "for sexual harassment . . . and lying during the investigation." Ex. J at 47:4-7.

4

37. Undisputed, but Ruley's cited testimony does not support the fact asserted. Labor Relations Specialist Klein recommended Ruley's termination. Ex. J at 46:25-47:3.

38. Undisputed, with the clarification that Ruley was reinstated as the result of a pre-arbitration settlement between the Company and the Union. Ex. 9, p. 11 and Ex. DD. As the settlement document states, Ruley's termination was converted to a suspension/final warning for gross misconduct, with no back pay. *Id.*

39. Undisputed, with the clarification that Ruley's cited testimony states that, during this time period, he visited Store 103 "maybe three, four times a month" and "maybe six different occasions," and *only* to pick up his prescription medications. Ex. 3 at 206:21-207:2, 208:15-16, 209:7-9.

44, 49, 52. Labbe's testimony regarding how Lummis may have felt (Ex. 8 at 65:10-14), what Linda Kauffman told him (*Id.* at 66:11-23), and what Morgan said to him (Ex. A at 71:16-20), is all inadmissible hearsay.

54. Undisputed, but Labbe's testimony indicates that Salazar first suggested that Labbe seek a restraining order against Ruley. Ex. A at 73:9-10.

55. Undisputed, with the clarification that the referenced "Trespass" policy is contained in a Kroger Loss Prevention Reference Manual. Ex. 9, pp. 13-15. This section gives examples justifying someone being asked to leave store premises, which notably do *not* include a former employee returning to a store to shop or pick up prescriptions. *Id.* at p. 14. Further, District Loss Prevention Manager Barta testified that terminated employees are not normally banned from the store and, in fact, she could not recall a former employee ever being banned for sexual harassment. Ex. JJ at 50:24-51:1; 52:11-13.

60. The cited testimony does not support the fact asserted. Salazar immediately reported the telephone conversation he had had with Labbe (Ex. Q), which triggered an investigation during which Labbe was asked to provide a statement. Ex. M at 53:13-55:8. Labbe's handwritten statement (Ex. EE) consists of three sentences:

> Aug 16 at 8:05 am I called Tom HR Coordinator. I explained to him that I was feeling unsafe at work, because Scott was shopping at King Sooper #103. Don't feel safe at work.

62. Labbe's cited testimony does not support the fact asserted. Labbe states that Salazar said, "it's a public store." Ex. A at 72:8.

68. Undisputed, however Carreras also testified that he understood how Labbe's remark about a terminated employee returning to shoot his employer could have been interpreted as a threat toward King Soopers' management, and, indeed, he believed that management and security "misread the situation because at that time Manuel was being disciplined." Ex. S at 30:1-13.

Viewed as a whole, Labbe's "disputed facts" are nothing more than restatement of the allegations of his Complaint. As this Court has cautioned, "[t]he nonmoving party's evidence must be more than 'mere reargument of [his] case or a denial of an opponent's allegation' or it will be disregarded." Chytka v. Wright Tree Serv., Inc., 925 F. Supp.2d 1147, 1159 (D. Colo. 2013) (citing 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998)).

### III. The evidence fails to establish that Labbe was subjected to severe or pervasive harassment because of his sex.

Ruley's alleged sexual remarks and conduct do not establish that he targeted Labbe because of his sex. While it is undisputed that Ruley is gay, his sexual orientation bears little on the conduct alleged here as it was directed at coworkers regardless of

6

their gender. Labbe relies on Dick v. Phone Directories Co., Inc., but as the Tenth Circuit cautioned in that case, "workplace harassment is not 'automatically discrimination because of sex merely because the words used have sexual content or connotations.'" 397 F.3d 1256, 1263 (10th Cir. 2005) (citing Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80 (1998)). To prove harassment is "because of sex" in the same-sex context, a plaintiff must either show it is motivated by sexual desire or that the harasser treats men and women differently in the workplace. Dick, 397 F.3d at 1263-64. The evidence presented by Labbe is insufficient to draw either inference.

It is undisputed that Ruley engaged in inappropriate sexual conduct with both female and male associates. Motion at 3-6; 11. Ruley patted Brinkley on her butt, stuck his tongue in Frank's ear, and allegedly "grinded on" Daniluk. Ex. Y at 20:12-16; Ex. Z; Resp. ¶ 22. Ruley did not target Labbe because he is male or due to sexual desire, but generally acted in a sexually inappropriate manner with his coworkers. Title VII is not a general civility code for the workplace. Oncale, 523 U.S. at 80; Dick, 397 F.3d at 1263.

Further, whether conduct is severe or pervasive "requires a careful consideration of the social context in which particular behavior occurs and is experienced by its target." Oncale, 523 U.S. at 81; Dick, 397 F.3d at 1267. Whether an employee participates in banter helps define the social context of the workplace. Burns v. Snow, 130 Fed. Appx. 973, 984-985 (10th Cir. 2005). In Burns, the court found that the plaintiff's admission that her coworkers' "vulgar" sense of humor "kind of rubbed off on [her]," and that she at times laughed and participated in the banter, indicated that she did not experience a severely hostile or abusive work environment. Id.

King Soopers does not dispute that Ruley's conduct at some point became unwelcome. Here as in Burns, however, Labbe participated in the banter. He laughed when Ruley told him to wear Daisy Duke shorts "[b]ecause it was just funny as hell." Ex. 8 at 51:10-22. He laughed when Ruley asked him if he was cold and pinched his nipples. Ex. 8 at 31:16-24. The totality of the circumstances leads to the conclusion that employees at Store 103 at times behaved inappropriately and that Labbe participated in this behavior. The evidence does not establish severe or pervasive harassment because of Labbe's sex sufficient to create an abusive working environment.

### IV. King Soopers took prompt and effective remedial action which put an end to any sexually harassing conduct.

Regardless, King Soopers is not liable for Ruley's conduct because the evidence establishes both prongs of the *Ellerth/Faragher* affirmative defense. The first prong is satisfied when an employer shows that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior. Helm v. Kansas, 656 F.3d 1277, 1288 (10th Cir. 2011). It is undisputed that King Soopers has a valid sexual harassment policy in place, including a robust complaint procedure, which is regularly communicated and disseminated to employees (including both Labbe and Ruley). Ex. B; Ex. C; Ex. A at 121:11-122:8, Ex. E. These facts demonstrate the exercise of reasonable care to prevent harassment. Helm, 656 F.3d at 1288-89.

King Soopers also acted promptly to correct Ruley's sexually harassing behavior. An employer's duty to take prompt corrective action is triggered when it has *adequate* notice of the harassing conduct. The court's discussion in Helm, 656 F.3d at 1290-1291, is instructive. In that case, the plaintiff first approached the chief judge and told him another judge had "done something inappropriate and made her feel uncomfortable" but

8

provided no details. Id. Finding that this vague complaint did not constitute adequate notice, the court held the employer acted reasonably because once the plaintiff did report specific allegations, the employer immediately investigated, resulting in disciplinary proceedings against the harasser. Id. at 1291. Under these circumstances, the Tenth Circuit held the employer satisfied the first prong of the *Ellerth/Faragher* defense. Id. Here, as in Helm, Labbe made a vague inquiry to Watanabe but "didn't report it to him," which did not suffice to give King Soopers adequate notice. Ex. 8 at 40:16-41:9.[1] Once Labbe finally came forward in June 2016 with specific allegations concerning Ruley's conduct, King Soopers promptly investigated, suspended Ruley, and subsequently terminated him. Ex. J at 45:2-46:9. No genuine issue of material fact exists regarding the reasonableness of King Soopers' preventive and corrective measures, and the unreasonableness of Labbe's mitigation efforts.

**V.  There is no causal connection between Labbe's protected activity and his discharge, and no evidence that King Soopers' reason for his discharge was mere pretext for retaliation.**

King Soopers does not dispute that Labbe engaged in protected activity and suffered a materially adverse action when he was discharged.[2] Motion at 14. As to the third element of his retaliation claim, Labbe argues only that the temporal proximity of his report to Salazar about "Ruley's continued harassment after his termination" and his own termination establishes a causal connection between the two. Resp. at 19. Labbe fails to address King Soopers' argument that Labbe's intervening actions broke any

---

[1] As to Labbe's unsubstantiated assertions that he "complained" to Tackett and Johnson, Labbe provides no admissible evidence to support these assertions and cannot rely on them. Fed. R. Civ. P. 56(c)(2); Resp. ¶¶16, 19; Reply at 2.
[2] It appears Labbe concedes that the alleged employment actions other than his termination were not materially adverse. Resp. at 18-19; Motion at 14-16.

9

such inference. Motion at 16-17. Labbe does not, and cannot, dispute his own description of what he told Salazar in their August 16, 2016, telephone conversation. Ex. A at 73:2-6. Tellingly, *Labbe himself states that King Soopers "misconstrued his statements and terminated [him].*" Resp. at 18-19. Whether Labbe's statements were actually misconstrued or not is immaterial. There is no dispute that it was Labbe's ill-advised statements about taking measures into his own hands "to protect himself" – and not his reporting of any concerns to Salazar -- that led to his discharge. This is an intervening event that breaks any causal connection between his protected activity and discharge. Twigg v Hawker Beechcraft Corp., 659 F.3d 987, 1001-02 (10th Cir. 2011) (intervening acts can break any casual connection).

Contrary to Labbe's assertion, no credibility determination is required concerning Salazar's description of the fateful conversation he had with Labbe (Resp. at 20), because King Soopers accepts Labbe's version as true for purposes of this Motion. Nor has Labbe presented any evidence suggesting that Salazar harbored any animus toward him, or was even involved in the decision to terminate his employment. Resp. at 19-20. It is undisputed that Labor Relations recommended Labbe's termination after concluding that his statement violated the workplace violence policy. Ex. R at 19:12-20:5. Indeed, Labbe's own Union agreed that his statement violated the Company's workplace violence policy and declined to pursue his grievance. Ex. U at 3; Ex. S at 32:15-24. Finally, Labbe has provided no evidence of any similarly situated employee who made a similar threatening remark, misconstrued or not, and who was not also discharged. Thus, there is no genuine issue of material fact precluding summary judgment on Labbe's retaliation claim.

10

Dated this 19th day of September, 2018.

                                        *s/ Heather Fox Vickles*
Heather Fox Vickles
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Telephone: (303) 299-8194
Email: hvickles@shermanhoward.com
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2018, I electronically filed the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Brooke H. Meyer, Esq.
Rachel E. Ellis, Esq.
Livelihood Law, LLC
ree@livelihoodlaw.com
bhm@livelihoodlaw.com

                                        *s/ Laura J. Kostyk*
Laura J. Kostyk, Legal Secretary

11